UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

IN RE:

HASMUKH PATEL and NIRUBEN PATEL,

Debtors.
_____/

Case No. 6:18-bk-00036-KSJ
Chapter 7

RICHARD B. WEBBER, CHAPTER 7 TRUSTEE,

    Plaintiff,

vs.

HASMUKH PATEL, FLORIDA FAMILY
HOSPITALITY, LLC, and LISA PATEL

    Defendant.
_____/

Adv. Pro. No. 6:20-ap-0002-KSJ

## MOTION FOR SUMMARY JUDGMENT
## BY FLORIDA FAMILY HOSPITALITY, LLC AND LISA PATEL

**IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PAPER YOU MUST FILE A RESPONSE WITH THE CLERK OF THE COURT AT GEORGE C. YOUNG FEDERAL COURTHOUSE, SUITE 5100, 400 W. WASHINGTON STREET, ORLANDO, FLORIDA 32801, AND SERVE A COPY ON THE MOVANT'S ATTORNEY, DANIEL R. FOGARTY, ESQUIRE, STICHTER, RIEDEL, BLAIN & POSTLER, P.A., 110 E. MADISON STREET, SUITE 200, TAMPA, FLORIDA 33602 AND ANY OTHER APPROPRIATE PERSONS WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF THE ATTACHED PROOF OF SERVICE, PLUS AN ADDITIONAL THREE DAYS IF THIS PAPER WAS SERVED ON ANY PARTY BY U.S. MAIL.**

**IF YOU FILE AND SERVE A RESPONSE WITHIN THE TIME PERMITTED, THE COURT WILL EITHER NOTIFY YOU OF A HEARING DATE OR THE COURT WILL CONSIDER THE RESPONSE AND GRANT OR DENY THE RELIEF REQUESTED IN THIS PAPER WITHOUT A HEARING. IF YOU DO NOT FILE A RESPONSE WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE RELIEF REQUESTED IN THE PAPER, AND THE COURT MAY GRANT OR DENY THE RELIEF REQUESTED WITHOUT FURTHER NOTICE OR HEARING.**

**YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY IF YOU HAVE ONE. IF THE PAPER IS AN OBJECTION TO YOUR CLAIM IN THIS BANKRUPTCY CASE, YOUR CLAIM MAY BE REDUCED, MODIFIED, OR ELIMINATED IF YOU DO NOT TIMELY FILE AND SERVE A RESPONSE.**

1

FLORIDA FAMILY HOSPITALITY, LLC ("**FFH**") and LISA PATEL ("**Lisa Patel**"), pursuant to Federal Rule of Civil Procedure 56, made applicable to this case pursuant to Rules 7056 of the Federal Rules of Bankruptcy Procedure, seek summary judgment:

## I.     Introduction

FFH, not Hasmukh Patel ("**Hank**") Patel, is the record owner of the Jacksonville hotel now operated as an Econo Lodge (the "**Hotel**") at issue in this litigation.  Lisa Patel, not Hank Patel, is the record owner, the sole member, and the sole manager of FFH.  Hank Patel was never the record owner of the Hotel or FFH.  Hank Patel did not personally provide any of the funds used by FFH to acquire the Hotel.  Hank Patel has not received any distributions from FFH, all of which were paid to Lisa Patel as the owner and sole member of FFH.

The Trustee contends that Hank Patel, not his daughter Lisa Patel, is the actual owner of FFH, or that FFH is Hank's alter ego.  The Court first heard these claims in the context of Synovus's attempt to deny Hank Patel's discharge for failure to list his alleged ownership of the Hotel in his bankruptcy schedules. The Court granted summary judgment in favor of Hank.

The undisputed facts recited by the Court in that summary judgment ruling in the Discharge Adversary are still undisputed.  They are the same facts on which the Trustee relies in making his alter ego or equitable ownership claims in this Adversary.  However, the facts show that FFH and Lisa Patel are entitled to summary judgment on those claims.

First, as to alter ego, the Trustee cannot show that Hank is a shareholder of FFH, dominates FFH to such an extent that FFH has no independent existence, that the corporate form of FFH was used fraudulently or for an improper purpose, or that the use of FFH caused injury to the Trustee or Hank's creditors.  Second, as to equitable ownership, the Trustee cannot show domination by Hank over FFH and its assets or that Hank received all or most of the benefits of FFH's ownership

of the Hotel. Because each of those two counts fail, the remaining counts in the Complaint fail as well, and FFH and Lisa Patel are entitled to summary judgment on all counts.

## II.    Background and Facts not Subject to Genuine Dispute

The Court has already succinctly laid out the undisputed facts as part of its opinion granting Hank his discharge in Adversary Proceeding No. 18-ap-00029 (the "**Discharge Adversary**"). (*See Order Granting Debtor's Motion for Summary Judgment,* Discharge Adv. Doc. No. 110, pp. 2–3). There, the Court stated as follows:

> "While the Debtor was immersed in litigation over his failed hotel projects, his daughter, Lisa Patel, purchased a hotel using a newly formed corporate entity— Florida Family Hospitality, LLC ("FFH"). Lisa undisputedly was always the sole owner of FFH. She bought the hotel, now operating as an Econo Lodge, from her uncle in 2014. Debtor helped his daughter open and run this Hotel since its inception. Lisa got the money to buy the Hotel with gifts (perhaps loans) from her family members to fund a down payment of $70,000, but NOA Bank (not the Plaintiff) funded most of the purchase with a loan. Debtor guaranteed that loan and offered his home as additional collateral for the loan. Debtor continues to work at the Hotel as a general manager receiving a modest salary. Lisa also provides other financial support to her parents."

(*Id.* at pp. 2–3 (internal citations omitted)).[1]

FFH acquired the Hotel from JaxFlorida Group, LLC ("**JaxFlorida**") in December 2014. (JaxFlorida Dep. Ex. 24, Jan. 11, 2019).[2] JaxFlorida is owned by Raman Patel, who is Lisa's uncle, and Hank's sister's husband. (*Id.* at 37:6–14; 76:21–79). JaxFlorida purchased the Hotel for $1 million from CenterState Bank in February 2014 (*Id.* at 38:10-20) following CenterState Bank's foreclosure of the previous unrelated owner. (H. Patel Dep. 13:16–14:13, Nov. 30, 2018).[3]

---

[1] In the quoted portion of its opinion, the Court cited to exhibits to Hank's Summary Judgment Motion (Discharge Adv. Doc. No. 65), and Exhibits A, B, C, D, E, and G thereto (the § 341 meeting transcript, transcripts of deposition of Hank, Lisa, the corporate representative of NOA Bank, an affidavit of Lisa, and the purchase and sale agreement between FFH and JaxFlorida, respectively). Those exhibits are incorporated herein by reference.
[2] A copy of the January 11, 2019 deposition transcript of the corporate representative of JaxFlorida, also filed at Discharge Adv. Doc. No. 77, is attached hereto as **Exhibit A**.
[3] A copy of the November 30, 2018 deposition transcript of Hank Patel, also attached to (Discharge Adv. Doc. No. 65) and also filed at Discharge Adv. Doc. No. 74, is attached hereto as **Exhibit B**.

The purchase by JaxFlorida was funded in part by approximately $300,000 from Lisa's maternal grandmother Dhaniben Patel (i.e., the mother of Lisa's mother Niruben ("**Nita**") Patel). (JaxFlorida Dep. 12:17–21; 16:25–17:7). The balance of $700,000 came from a third party, but not from Hank or Nita. (JaxFlorida Dep. 43:4–7.)

Hank has never had an ownership interest in the Hotel, JaxFlorida, or FFH. Neither has Hank's wife, Nita. Neither Hank nor Nita personally funded from their assets any portion of the funds used to purchase the Hotel by JaxFlorida or by FFH. As described above, JaxFlorida was owned by the Hank's brother-in-law and the funds to purchase the Hotel were provided by Nita's mother, Dhaniben Patel. As to FFH, those funds came from two sources: first, an SBA loan by NOA Bank to FFH, guaranteed by Lisa and by Hank, and collateralized by a second mortgage from Hank and Nita on a piece of real estate. Second, funds came from members of Lisa's family, on both Hank's and Nita's side. (L. Patel Dep. 23:18–20; 62:4–72:12, Dec. 6, 2018).[4] NOA Bank required that Hank Patel join as a guarantor and pledge collateral for the Hotel loan given to FFH, which Defendant agree to do in order to support FFH's acquisition of the Jaxport Inn, but NOA Bank understood that Hank Patel had no ownership in FFH. H. Patel Dep. 91:13-25, 92:1-10; NOA Bank Dep. 18:8-25, 19:1-3, Oct. 30, 2018.[5]

None of Hank's creditors, including Synovus Bank (the "**Bank**")[6]—the client of the Trustee's special counsel Anthony & Partners—were lenders on the Hotel. And none of Hank's creditors ever had any lending or other relationships with JaxFlorida, FFH, or Lisa Patel.

---

[4] A copy of the December 6, 2018 deposition transcript of Lisa Patel, also attached to (Discharge Adv. Doc. No. 65) and also filed at Discharge Adv. Doc. No. 75, is attached hereto as **Exhibit C**.
[5] A copy of the October 30, 2018 deposition transcript of the corporate representative of NOA Bank, also attached to (Discharge Adv. Doc. No. 65) and also filed at Discharge Adv. Doc. No. 76, is attached hereto as **Exhibit D**.
[6] Synovus Bank by way of Florida Community Bank, N.A., f/k/a Premier American Bank, N.A., Assignee of the Federal Deposit Insurance Corporation as Receiver for Coastal Bank.

4837-7162-2358, v. 3

Distributions that have been made by FFH have all been paid to Lisa Patel, as the sole member of FFH. (L. Patel Dep. 40:15–17; 41:8–19; 44:17–45:22). Hank has not received any distributions from FFH. (H. Patel Dep. 51:11–15; 64:5–10). Hank does receive reimbursement of credit card charges made for the hotel purchases, but he tracks those expenses. (H. Patel Dep. 52:5–22; 71:16–24).

Lisa Patel, as the owner of FFH, makes major decisions for FFH, such as capital expenditures and salaries, but otherwise leaves day-to-day operational decision-making to the general manager, Hank. (L. Patel Dep. 15:5–6; 17:5–7; H. Patel Dep. 49:7–12).

Lisa Patel is married and has not lived in the same household as her parents since before 2014. (L. Patel Dep. 6:25-7:4; 12:12-13:1).

### III. Legal Standard

Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Fed. R. Bankr. P. 7056; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a summary judgment must provide more than a mere "scintilla" of evidence to avoid summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and "must rely on more than conclusory statements or allegations unsupported by facts." *Williams v. U.S.*, 2009 WL 3200687 at *2 (M.D. Fla. 2009); *see also Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("Conclusory allegations without specific supporting facts have no probative value."). Thus, if the opposing party's response consists of nothing "more than a repetition of its conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1991).

A dispute regarding a material fact is only "genuine" if the evidence is such that a

5

reasonable jury would return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Once the moving party provides evidence that there is no issue of material fact, the burden shifts to the non-moving party "to proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed Cir. 1987); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The non-moving party must bring forth more than its own allegations of a genuine issue of material fact and more than a mere scintilla of evidence or an abstract theory to survive a motion for summary judgment." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 363 (S.D. Fla. 1996). Summary judgment may be requested not only as to an entire case but also to a claim, defense, or part of a claim or defense. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.

The primary purpose of granting summary judgment is to avoid an unnecessary trial when there is no genuine issue of material fact in dispute. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). Although the evidence and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1982), once a moving party identifies those portions of the record that demonstrate the absence of a *genuine* issue of *material* fact, the party opposing summary judgment must set forth specific facts showing a *genuine* issue for trial and may not rely on mere allegations or denials. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 256–57.

The Complaint has six counts. The first two counts consist of one count for piercing the corporate veil/alter ego (brought as one count), and one for declaratory judgment to determine that Hank Patel is the owner of FFH or the Hotel directly. The remaining counts are for turnover or to avoid transfer made by FFH to Lisa Patel, all of which were made to Lisa Patel as the owner of FFH. If the first two counts fail, so do the remaining counts. By way of illustration, if Hank Patel is not the equitable owner of FFH, then FFH making distributions to Lisa, FFH's sole member, cannot be avoided as fraudulent transfers by the Trustee.

### IV.   Piercing the Corporate Veil/Alter Ego.

**A. Reverse veil piercing involves some effort to secrete assets or avoid liability, but Hank never had the asset, and his creditors can attack his salary, which is the only benefit he has received from FFH or the Hotel.**

Count I is styled as "an action seeking to pierce the corporate veil and/or for alter ego." Complaint, ¶ 66. The Trustee seeks a determination that FFH is an alter ego of Hank, to pierce the corporate veil, and to determine that "FFH, the Hotel and other assets of FFH are property of the Estate." Complaint, p. 10. Count I fails because Hank did not own FFH or the Hotel at any point in time, and none of his funds or assets were used by FFH (or by JaxFlorida) to acquire the Hotel.

To pierce the corporate veil under Florida law, the claimant has a heavy burden. *In re Pearlman*, 462 B.R. 849, 855 (Bankr. M.D. Fla. 2012) (Jennemann, J.). To maintain an action for veil piercing, the Trustee must prove three factors by a preponderance of the evidence:

> (1) The individual dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the individual was in fact an alter ego of the corporation;
>
> (2) The corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) The fraudulent or improper use of the corporate form caused injury to the claimant.

7

"Alter ego" is not, standing alone, a claim for relief, but merely relates to an element of a claim to pierce the corporate veil. A veil piercing claim seeks to disregard the corporate fiction; a fiction "Florida courts will not easily disregard." *Molinos Valle Del Cibao, C. por A. v. Lama,* 633 F.3d 1330, 1349 (11th Cir. 2011) (citing *Roberts' Fish Farm v. Spencer,* 153 So.2d 718, 721 (Fla. 1963)).

Typically, plaintiffs use veil piercing claims to pass a corporation's liability onto a corporation's shareholders when they have used the corporate fiction to nefarious ends. The Trustee's theory does not fit into this archetype. Although still strained, the Trustee's theory is, at best, more akin to "reverse" veil piecing, where a party attempts to pierce the corporate veil in order to hold a corporation liable for a shareholder's debt. But again, Lisa Patel is the owner of the equity in FFH, not the Debtor. So even "reverse" veil piercing would not appear to fit here.

Florida has recognized the reverse veil piercing remedy to the limited extent it is used "to hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." *Estudios, Proyectos e Inversiones de Centro Am. v. Swiss Bank Corp.,* 507 So.2d 1119, 1120 (Fla. 3d DCA 1987) (affirming in part lower court's decision to grant lender a writ of attachment securing corporate assets where controlling shareholder-guarantor created corporation and transferred his ownership of property to defraud personal creditors); *Braswell v. Ryan Invs., Ltd.,* 989 So.2d 38 (Fla. 3d DCA 2008) (denying reverse veil piercing remedy where the corporate act of taking title of asset preceded the existence of the claims and obligations sued upon). The remedy invoked is available only "where the shareholders have formed or used the corporation to secrete assets and thereby avoid *preexisting* personal liability." *Estudios,* 507 So.2d at 1120 (citing

8

*Braswell*, 989 So. 2d at 39 (corporation was created and property transferred before liability arose, so not done to avoid preexisting liability)).

Piercing the corporate veil requires a showing:

> that the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fidely established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.

*Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984).

A review of the cases shows that a reverse piercing remedy is only available "where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." *Braswell*, 989 So. 2d at 39.

> The rule is, perhaps sub silentio, based on the idea that when one enters into an agreement with another entity, whether individual or corporate, which calls for future performance, it is in presumed reliance on the ability to look to all of that party's existing assets to satisfy any damage caused by his failure to perform. The direct and reverse piercing doctrines are respectively designed to prevent a fraudulent breach of that understanding which occurs when a contracting individual later fraudulently transfers his assets to a controlled corporation or a contracting corporation does so to a controlling individual.

*Id.* at 40. So, for example, in the seminal case of *Estudios*, the controlling shareholder owned and controlled a controlling interest in a corporation, which the court found that he created and transferred his ownership of a farm that he owned in order to use the corporation to secrete his personal assets and thereby defraud his creditors. *Estudios*, 507 So.2d at 1121.

The Trustee cannot make these requisite showings. Hank is not a stockholder of FFH, none of the funds used by Lisa Patel to purchase FFH came from Hank, and even the initial purchase of the Hotel by JaxFlorida was made without any funds from Hank. The critical point here is that Hank's estate was not diminished in any way by JaxFlorida's purchase of the Hotel

9

and eventual sale to FFH, owned by Lisa Patel. Importantly, none of Hank's creditors were harmed by these transactions.

## B. Hank is not the controlling shareholder, or the spouse or household member of the controlling shareholder, so no veil piercing action lies.

Under Florida law, a veil piercing claim can be used only against a shareholder. In *Molinos Valle Del Cibao,* C. *por A. v. Lama,* 633 F.3d 1330 (11th Cir. 2011), a binding decision on the Court, the appellants argued that the members of the defendant corporation's board of directors could be held liable for the corporation's debt under veil piercing theory. *Id.* at 1348-49. The Eleventh Circuit, interpreting Florida, law, unequivocally disagreed:

> It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that … the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation.

*Id.* at 1349.

The Eleventh Circuit in *Molinos* addressed directly prior Florida court decisions holding non-shareholders liable for a corporation's debts under the veil piercing theory. The court reasoned that *Walton v. Tomax Corp.*, 632 So. 2d 178 (Fla. 5th DCA 1994) is distinguishable because the subject of the veil piercing was the wife of the shareholder. As the *Molinos* court stated: "The Florida Supreme Court would likely find that . . . fact dispositive; a wife's ownership is a very close analogue to the husband's ownership because the economic proceeds likely benefit the entire family unit." *Molinos*, 633 F. 3d at 1350.

Although one court has extended *Molinos* beyond a strict spousal context, *see Netjets Aviation, Inc. v. Peter Sleiman Development Group*, 2011 WL 11560026 (M.D. Fla. June 13, 2011), *report and recommendation adopted in part*, 2011 WL 11552881 (M.D. Fla. Sept. 27, 2011) (leaving issue open by denying the defendant's motion to dismiss because it found the defendant

had an analogous relationship to the spousal relationship exception identified by *Molinos*; the defendant lived with the shareholder), at least one district court has rejected a limited reading of *Molinos*. *See In re Air Crash near Rio Grande Puerto Rico On Dec. 3, 2008*, No. 11-MD-02246-KAM, 2013 WL 1729385, at *4 (S.D. Fla. Apr. 22, 2013). If the Eleventh Circuit wanted to issue such limited holding—i.e., that its decision only applied to insulate board members form veil piercing liability—it could have easily done so. But instead, *Molinos* "extensively analyzed Florida law on the question of whether stock ownership was a legal prerequisite to alter ego liability. In so doing, the court stated '[t]he theme of ownership underlies Florida's leading case on piercing the corporate veil' and it noted that the Florida Supreme Court's rationale for piercing the corporate veil was 'shareholder liability.'" *Id.* (quoting *Molinos*). As the court in *Air Crash* stated: "While the *Molinos* court acknowledged that the Florida Supreme Court would recognize an exception to the shareholder requirement where a spousal relationship exists, there is no indication in the *Molinos* decision that Florida law recognizes a broader category of relationships which would allow alter ego or veil piercing liability." *Id.*

Here, Hank Patel is not a shareholder of FFH, is not the spouse of a shareholder of FFH, and is not in the same household as a shareholder of FFH. *Molinos* recognized a limited exception to the shareholder requirement for spouses, but that exception does not encompass children. This is particularly true where there is no genuine dispute of material fact that Lisa Patel does not live in the same household as Hank, and the benefits of ownership of FFH have been realized by Lisa, not Hank.

## C. Hank running the Hotel as general manager does not destroy the corporate separateness of FFH, where Lisa is the ultimate decision maker.

With respect to the injury to creditors, whether those creditors be of the corporate entity or of the individual shareholder or member, the focus is on the abuse of the corporate structure. *In*

*re Ortega T.*, 562 B.R. 538, 542 (Bankr. S.D. Fla. 2016). As Judge Paskay said, "courts will not hesitate to pierce the veil of the corporate fiction when it is shown that a corporation was organized and being used by an individual either to avoid personal liability or to immunize his individually owned assets from the reach of legitimate creditors." *In re Charnock*, 97 B.R. 619, 627 (Bankr. M.D. Fla. 1989).

Here, there are no facts showing that FFH was organized so Hank could avoid personal liability through FFH. Hank has no personal liability to FFH's creditors, other than his guaranty to NOA Bank, and the Trustee has not alleged differently. The Trustee is not pursuing claims common to FFH's creditors, seeking to hold Hank liable for FFH's debts.

Further, the Trustee can't show that the Hotel was an individually owned asset of Hank that has been immunized from Hank's creditor's reach. By way of example and contrast, in *Charnock*, on the petition date the Debtor's wife was the owner of entities that owned a marina and related assets, all of which the debtor was running. The wife invested no funds whatsoever in these entities and in effect had absolutely nothing to do with running the affairs of those entities or making any decisions concerning the conduct of their businesses. Moreover, the debtor repeatedly held himself out to the public in general that he was the "owner," the dominant force in developing the marina, and that it was *his* marina. Most importantly, the entities at issue were originally owned by the debtor, but eventually moved through various transfers to his wife. *In re Charnock*, 97 B.R. 619, 627–28 (Bankr. M.D. Fla. 1989).

Here, in stark contrast, the undisputed facts show that Hank never owned the Hotel, never provided any money to purchase the Hotel, and did not sell or transfer the Hotel or any of his assets to FFH or Lisa, whether to hide his involvement or for any other reason. FFH has no impact on Hank's personal liability – he still owed money to Florida Community Bank. Hank did nothing to

immunize his assets from his creditors: the Hotel or the funds used to acquire it were never his assets to begin with. Put simply, none of Hank's creditors were harmed by the transactions at issue in this case.

On veil piercing and alter ego, the issue is not control, but dominance: "the question is not whether [Hank] controlled [FFH], but whether [Hank] dominated [FFH] to such an extent that [FFH] was in fact nonexistent because of the control." *In re Paul C. Larsen, P.A.*, 610 B.R. 684, 688 (Bankr. M.D. Fla. 2019). There is nothing in the record showing that Hank held himself out as the owner of FFH or the Hotel.  Hank was paid a modest salary by FFH.  He took direction from Lisa on major decisions of the type made by the owner of a hotel, rather than a manager of a hotel. NOA Bank knew and understood that Lisa was the owner of FFH when it loaned FFH the funds to purchase the Hotel.

## V.     Equitable Ownership

As an alternative to reverse veil piercing, the Trustee in Count II of the Complaint asserts that Hank is the equitable or nominee owner of FFH, relying on the equitable ownership/nominee theory of *Shades Ridge Holding Company, Inc. v. United States*, 888 F.2d 725 (11th Cir. 1989) ("*Shades Ridge*"). The *Shades Ridge* elements are "(i) the control the taxpayer exercises over the nominee and its assets; (ii) the family relationship, if any, between the taxpayer and the corporate officers; and (iii) the use of corporate funds to pay the taxpayer's personal expenses."

### A. All of the benefits of FFH's ownership of the Hotel have gone to Lisa.

The Trustee will no doubt point to Judge Isicoff's case *Angueria v. Trujillo*, 607 B.R. 734 (Bankr. S.D. Fla. 2019) in support of his claims. Even if the Court agrees with all of Judge Isicoff's legal conclusions, the facts here are much different than those in *Trujillo*: <u>the Patels are not the Trujillos.</u>  The facts of *Trujillo* are described in part in an earlier decision not involving these alter

13

ego and nominee ownership issues. *See* In re Ortega T., 573 B.R. 284 (Bankr. S.D. Fla. 2017). Simplified, Trujillo and his two brothers created a complicated web of entities and trusts that ultimately owned an Ecuadorian bank, which eventually failed in part by a transaction that the brothers orchestrated. The liquidators of one entity, left owed money as a result of the failed transaction, sued and recovered a judgment against Trujillo for a form of breach of fiduciary duty.

In the relevant *Trujillo* decision on the equitable ownership/nominee theory, Judge Isicoff denied a motion for partial judgment on the pleadings filed by the defendant entities, where the chapter 7 trustee advanced theories almost identical to those the Trustee is pursuing here. In *Trujillo*, Judge Isicoff wrote that "the Trustee has presented evidence that, even were the stock or beneficial interests held by the Debtor's children, the Debtor derived all, or most, of the benefit in the various Corporate Defendants." *In re Trujillo*, 607 B.R. at 740. The court found that the trustee proved "*inter alia,* the fact that the Debtor and his wife are the only persons who have ever received any distributions from the [claimed sham Panamanian trust established by Mossack Fonseca & Co.], notwithstanding the Debtor's transfer of his beneficial interest in [the trust] to his children (which the children may or may not have later disclaimed)." *Id.* at 741.

In contrast, here Lisa Patel, not Hank Patel, was the initial owner of FFH, and neither Lisa nor FFH received any transfer of any interest in an asset from Hank. All distributions made by FFH were made to Lisa and were never made to anyone other than Lisa. Hank (and Nita) derive a salary from FFH and receive reimbursement of expenses from FFH. Otherwise Hank has had no significant benefit from FFH or the Hotel. Lisa, not FFH, paid some credit card bills for her parents during the early stages of their bankruptcy case. FFH reimburses Hank's business expenses, which are tracked and accounted for in detail.

Synovus obtained an expert report from Steven S. Oscher of Oscher Consulting P.A.

purporting to show the personal expenses paid by FFH. (Discharge Adversary, Doc. No. 104). Oscher identified that Hank's salary was below-market, which does not appear to have any application to the *Shades Ridge* elements. In fact, it tends to disprove that Hank is deriving some personal benefit other than his salary. The only personal benefits obtained by Hank are from Lisa's assistance in paying their personal credit card, which Oscher identified as approximately $9,000 over a 21-month period. Those payments alone—made by Lisa, not FFH—fall well short of the *Shades Ridge* standard or the circumstances in *Trujillo*.

### B.  The other *Shades Ridge* elements are absent.

As discussed above, there are no genuine disputes of material fact that Hank does not exercise sole or complete control over FFH and the Hotel. To be sure, Hank is employed as the general manager of the Hotel and Nita works the front desk. Each of Hank, Nita, Lisa testified that the corporate-level decisions for FFH are all made or approved by Lisa, then implemented by Hank, Nita, or others as employees of FFH. To help his daughter, Hank was involved in the process of starting FFH, obtaining the loan and franchise, and other things. But, as also testified by the loan broker Rick Patel, Lisa was involved in obtaining the NOA Bank loan and NOA Bank fully understood that Lisa Patel was the owner of FFH.

### VI.  Because the Reverse Veil Piercing and Nominee Ownership claims fail, the remaining counts fail as well.

The remaining counts in the complaint assert claims for turnover of FFH (Count III) and avoidance of the distributions made by FFH to Lisa Patel (Count IV, V, and VI). Turnover is only appropriate, if at all, if the Trustee can pierce the corporate veil or has equitable ownership of the interests in FFH. Similarly, the distributions taken by Lisa Patel—again, the sole owner and only one who received and benefited from the distributions made by FFH—are avoidable, if at all, only if Lisa Patel is not the sole owner of FFH. For the numerous reasons stated above, FFH and Lisa

Patel are entitled to summary judgment as to the piercing and nominee ownership claims, and therefore, as to the remaining counts as well.

## VII.  Conclusion

Hank's creditors did not do business with him based on his interest in FFH or the Hotel, because he never had one.  Hank's creditors did not do business with him based on his interests in the funds used to acquire the Hotel, because it wasn't his money.  Hank has never received any distributions from FFH but gets a salary to manage the Hotel.  Under these circumstances, there are no genuine disputes of material fact on the key elements of the Trustee's claims, and summary judgment should be granted in favor of FFH and Lisa Patel.

DATED:  January 8, 2021.

/s/ *Daniel R. Fogarty*
Daniel R. Fogarty (FBN 0017532)
dfogarty@srbp.com
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
*Attorneys for Florida Family Hospitality, LLC and Lisa Patel*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the Court's CM/ECF system to all parties receiving electronic service on the **8**th day of **January, 2021.**

/s/ *Daniel R. Fogarty*
Daniel R. Fogarty