ORDERED.

Dated: July 30, 2021

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | )<br>) |
| Hasmukh Patel and<br>Niruben Patel, | ) Case No. 6:18-bk-00036-KSJ<br>) Chapter 7<br>) |
| Debtors. | )<br>) |
| Richard B. Webber, Chapter 7 Trustee, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Adversary No. 6:20-ap-00002-KSJ<br>) |
| Hasmukh Patel, Florida Family<br>Hospitality, LLC, and Lisa Patel, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

The issue is whether the Debtor, Hasmukh ("Hank") Patel, is the "true" but secret owner of Florida Family Hospitality, LLC ("FFH"), not Hank's daughter, Lisa Patel. The Chapter 7 trustee, Richard B. Webber, argues FFH is owned by the Debtor

as his "alter ego" or "nominee."[1] If proven, Hank's secret interest in FFH is administrable in this bankruptcy case and Lisa, the legal owner of FFH, would need to turnover her shares of FFH and any monies she withdrew under §§ 542, 548(a)(1)(A) or (B), or 549 of the Bankruptcy Code.[2] The Defendants—Hank, Lisa, and FFH—oppose the Trustee's allegations, contending Hank has no interest in FFH and only Lisa legally and equitably owns FFH. After considering the trial testimony,[3] stipulation of facts,[4] evidence, and post-trial closing statements,[5] I agree with the Defendants. Lisa owns FFH; Hank has no interest in the company; and the Trustee has no claim to Lisa's interest or FFH.

## The Patel Family are Experienced Hoteliers

Hank has a long history of running and operating hotels.[6] Over forty years ago, when Hank was about Lisa's age, he purchased his first hotel, which provided his father an income and a place to live.[7] He later bought numerous hotels. And his immediate and extended family, including his wife, Niruben ("Nita") Patel, and her family, also are in the hospitality industry owning many more hotels.[8] Because Hank

---

[1] Compl., Doc. No. 1. All Doc. No. citations refer to pleadings filed in Adversary Proceeding 6:20-ap-00002-KSJ unless otherwise noted.
[2] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et seq.*
[3] This trial took place over three days: March 8, 9, and 10, 2021. The trial transcripts were filed March 27, 2021. Doc. Nos. 125, 126, 127.
[4] Prior to trial, the parties filed a joint stipulation of facts. Doc. No. 107.
[5] Post-trial closing statements were filed on April 26, 2021. Defs.' Joint Post-Trial Closing Brief, Doc. No. 136; Trustee's Proposed Findings of Fact & Conclusions of Law, Doc. No. 137.
[6] Joint Stipulation of Facts ¶ 1, Doc. No. 107.
[7] Trial Tr. (Day 3 of 3) 31:1-24, Mar. 10, 2021, Doc. No. 127.
[8] Trial Tr. (Day 2 of 3) 145:4-9, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 32:3-9, Mar. 10, 2021, Doc. No. 127.

has a wealth of experience in the industry, his family members rely on him for help with purchase negotiations, accounting, and computer-related issues.[9]

Yet, the close-knit family strictly maintains separate ownership of their individual hotels. They keep separate financial records[10] and do not commingle ownership interests. Certainly, Hank has had formal joint ventures with family members, such as his brother-in-law, Ramanbhai ("Raman") P. Patel,[11] but such joint interests were disclosed and formalized. And the Patel family contributes monies, as needed, to help each other acquire new properties;[12] however, the family documents these transfers, follows industry practices, and does not commingle funds.[13]

### The Debtors' Financial Problems

In 2014, Hank and his wife, Nita (collectively, the "Debtors"), were having financial troubles.[14] He lost his "entire life investment" in his hotel businesses.[15] Three hotels were in foreclosure: Hampton Inn in Melbourne, Florida; Super 8 in Titusville, Florida; and America's Best Value Inn in Yulee, Florida.[16] Hank's only source of income were monies he earned by installing TV satellite dishes.[17] Hank was close to retirement age, and the Debtors' youngest daughter is disabled and needs rigorous

---

[9] *See, e.g.*, Trial Tr. (Day 1 of 3) 71:3-8, 72:1-6, 89:5-9, 163:23-164:10, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 182:20-183:24, Mar. 9, 2021, Doc. No. 126.
[10] *See, e.g.*, Trial Tr. (Day 3 of 3) 39:13-23, 122:19-113:7, Mar. 10, 2021, Doc. No. 127.
[11] Trial Tr. (Day 2 of 3) 178:14-179:15, Mar. 9, 2021, Doc. No. 126; Joint Stipulation of Facts ¶¶ 16, 17, Doc. No. 107.
[12] Trial Tr. (Day 1 of 3) 86:5-18, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 16:15-18, Mar. 9, 2021, Doc. No. 126.
[13] Trial Tr. (Day 2 of 3) 16:19-17:14, Mar. 9, 2021, Doc. No. 126.
[14] Trial Tr. (Day 1 of 3) 74:6-7, Mar. 8, 2021, Doc. No. 125.
[15] Trial Tr. (Day 1 of 3) 74:9-75:9, Mar. 8, 2021, Doc. No. 125.
[16] Trial Tr. (Day 1 of 3) 75:11-22, Mar. 8, 2021, Doc. No. 125.
[17] Trial Tr. (Day 1 of 3) 74:11-13, Mar. 8, 2021, Doc. No. 125.

care.[18] Hank focused on his TV satellite dish installation business rather than pursuing a new hotel.[19] He did, however, as he always had, continue to help his family with their acquisition and operation of hotels.

At this time of financial stress in 2014, the Debtors moved into the hotel property that is the center of this dispute (the "Hotel"),[20] which at the time was called the JaxPort Inn.[21] Nita initially acted as general manager; Hank focused on caring for their special-needs daughter and running his satellite dish business.[22] But when their other daughter, Lisa, purchased the Hotel later in 2014, Hank assumed the role of manager.[23] Nita transitioned to Assistant General Manager, overseeing the housekeeping department.[24]

The Debtors filed for Chapter 7 bankruptcy on January 4, 2018.[25] At the time of the bankruptcy filing, the Debtors listed four lawsuits including three that related to the failed hotel ventures.[26] The Debtors listed ownership interests in three corporate entities, but they listed no interest in FFH.[27]

---

[18] The Debtors have three daughters. Trial Tr. (Day 1 of 3) 69:3-11, Mar. 8, 2021, Doc. No. 125.
[19] Trial Tr. (Day 1 of 3) 77:10-16, Mar. 8, 2021, Doc. No. 125.
[20] The Hotel is located at 1181 Airport Rd., Jacksonville, Florida 32218. Joint Stipulation of Facts ¶ 3, Doc. No. 107; Trial Tr. (Day 1 of 3) 36:17-37:7, 38:17-39:6, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 142:22-23, 143:19-144:05, Mar. 9, 2021, Doc. No. 126.
[21] Trial Tr. (Day 2 of 3) 143:19-144:05, 193:4-6, Mar. 9, 2021, Doc. No. 126.
[22] Trial Tr. (Day 1 of 3) 71:3-72:20, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 193:4-6, Mar. 9, 2021, Doc. No. 126.
[23] Trial Tr. (Day 1 of 3) 67:14-17, 68:25-69:2, 70:10-16, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 142:13-23, 143:19-144:5, Mar. 9, 2021, Doc. No. 126; Pl.'s Ex. 15, Doc. No. 92-15; Pl.'s Ex. 21, Doc. No. 93-1; Pl.'s Ex. 79, Doc. No. 97-12.
[24] As the Assistant General Manager, Nita earns a salary of about $30,000 a year. Trial Tr. (Day 2 of 3) 21:12-22, Mar. 9, 2021, Doc. No. 126.
[25] Voluntary Pet. Under Chapter 7, *In re Patel*, 6:18-00036-KSJ (Bankr. M.D. Fla. Jan. 4, 2018), Doc. No. 1.
[26] *Id.* at 36.
[27] *Id.* at 13.

### **Raman Patel's Venture – Jax Florida and the JaxPort Inn**

In early 2014, Hank discussed the opportunity to buy the Hotel with his brother-in-law, Raman, who is married to Hank's sister.[28] Raman had been in the hotel business for many years, and Hank and Raman had other joint business interests.[29] Hank did not want to buy the hotel, but, acting on Raman's behalf, he started negotiations to purchase the Hotel from CenterState Bank of Florida, N.A. ("CenterState").[30] I specifically find Hank was acting on behalf of Raman and at Raman's (not Hank's own) direction.[31]

Hank, acting for Raman, made an offer to purchase the Hotel for $1,000,000, with a $250,000 non-refundable earnest money deposit, executing a Purchase and Sale Agreement ("PSA").[32] The PSA defined "Buyer" as "HASMUKH PATEL, his successors and/or assigns."[33] Hank always anticipated assigning the purchase to the entity Raman selected to take title to the Hotel.

Before closing, JaxFlorida Group, LLC ("JaxFlorida") was created as a Florida limited liability company. Raman was listed as the member, manager, and registered agent.[34] Hank later assigned the PSA to JaxFlorida, Raman's company.[35] On February

---

[28] Joint Stipulation of Facts ¶ 15, Doc. No. 107; Trial Tr. (Day 1 of 3) 76:22-77:05, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 181:18-25, Mar. 9, 2021, Doc. No. 126.
[29] Trial Tr. (Day 2 of 3) 177:12-178:02, Mar. 9, 2021, Doc. No. 126; Joint Stipulation of Facts ¶¶ 16, 17, Doc. No. 107.
[30] Joint Stipulation of Facts ¶ 3, Doc. No. 107.
[31] Trial Tr. (Day 1 of 3) 78:1-20, Mar. 8, 2021, Doc. No. 125.
[32] Joint Stipulation of Facts ¶ 7, Doc. No. 107; Pl.'s Ex. 6, Doc. No. 92-6.
[33] Pl.'s Ex. 6, Doc. No. 92-6.
[34] Joint Stipulation of Facts ¶¶ 14, 15, Doc. No. 107; Pl.'s Ex. 12, Doc. No. 92-12.
[35] Joint Stipulation of Facts ¶ 19, Doc. No. 107; Pl.'s Ex. 14, Doc. No. 92-14.

21, 2014, JaxFlorida and CenterState closed on the sale of the Hotel for the purchase price of $1,000,000.[36]

Hank contributed none of the monies Raman used to buy the Hotel. The $250,000 earnest money deposit and the other money needed for closing was wired from an account belonging to Dhanumati Patel, Hank's mother-in-law, on which Nita, was an authorized signer.[37] The remainder of the purchase price was funded by a loan from Southern Hospitality Funding, LLC ("Southern Hospitality").[38] Although Hank helped Raman get this loan from Southern Hospitality,[39] and the loan was guaranteed by Raman, Hank, and their spouses, no monies flowed to Hank or through any account he controlled.[40]

From February to December 2014, JaxFlorida was the legal owner of the Hotel and did business as the JaxPort Inn.[41] Nita managed the JaxPort Inn;[42] Hank assisted with management but was focused on caring for their special-needs daughter and his TV satellite dish business.[43]

---

[36] Joint Stipulation of Facts ¶ 24, Doc. No. 107; Pl.'s Ex. 19, Doc. No. 92-19.
[37] Trial Tr. (Day 1 of 3) 85:05-11, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 179:24-180:04, Mar. 9, 2021, Doc. No. 126; Joint Stipulation of Facts ¶¶ 10, 21-23, Doc. No. 107. There is some conflict in the record of Dhanumati's knowledge of the transfer, but Dhanumati did testify that all expenditures out of that account are authorized by her. Dhanumati Patel Dep. 14:16-20, Doc. No. 102. Additionally, Hank is not listed on this account and this Court previously denied the Trustee's motion to amend to add a claim that this account belongs to Hank and is property of the estate. Joint Stipulation of Facts ¶ 11, Doc. No. 107; Order Denying Mot. to Amend Compl., Doc. No. 70.
[38] Joint Stipulation of Facts ¶ 25, Doc. No. 107.
[39] Joint Stipulation of Facts ¶¶ 13, 23, Doc. No. 107.
[40] Joint Stipulation of Facts ¶ 25; Doc. No. 107.
[41] Trial Tr. (Day 1 of 3) 67:18-19, Mar. 8, 2021, Doc. No. 125; *see also* Joint Stipulation of Facts ¶¶ 24, 43, Doc. No. 107.
[42] Trial Tr. (Day 2 of 3) 143:19-144:05, 193:4-6, Mar. 9, 2021, Doc. No. 126.
[43] Trial Tr. (Day 1 of 3) 71:3-72:20, Mar. 8, 2021, Doc. No. 125.

### Lisa Patel's Venture – FFH and the Econo Lodge

Raman, however, soon decided he wanted to sell the Hotel and agreed to sell it to Lisa in April 2014.[44] FFH was created as a Florida limited liability company.[45] Lisa was listed as the member and manager; Kantaben ("Kanta") Patel[46] was listed as the registered agent.[47] In May 2014, Lisa signed the "Real Estate and Asset Purchase Agreement" agreeing FFH would buy the Hotel for $1,300,000. She gave Raman a non-refundable deposit of $25,000.[48] None of these monies came from the Debtors.

To fund the Hotel purchase, Lisa received funds from fifteen extended family members of $322,000.[49] None of these monies came from her parents, the Debtors.[50] Besides the family funds, FFH applied for financing with NOA Bank ("NOA").[51]

---

[44] Trial Tr. (Day 2 of 3) 188-23-189:09, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 71:21-24, Mar. 10, 2021, Doc. No. 127.
[45] Joint Stipulation of Facts ⁋ 26, Doc. No. 107; Pl.'s Ex. 22, Doc. No. 93-2.
[46] Kanta Patel is Hank's sister, Lisa's aunt. Joint Stipulation of Facts ⁋ 34, Doc. No. 107.
[47] Joint Stipulation of Facts ⁋ 26, Doc. No. 107; Pl.'s Ex. 22, Doc. No. 93-2; Trial Tr. (Day 1 of 3) 69:3-4, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 142:3-4, Mar. 9, 2021, Doc. No. 126.
[48] Joint Stipulation of Facts ⁋ 29, Doc. No. 107; Pl.'s Ex. 25, Doc. No. 93-5.
[49] Trial Tr. (Day 2 of 3) 11:13-12:10, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 21:18-22-23:14, 76:1-77:15, Mar. 10, 2021, Doc. No. 127; Pl.'s Ex. 60, Doc. No. 96-10. After the sale from JaxFlorida to FFH, there were funds due to Dhanumati for the loan provided to purchase the Hotel in February 2014. Instead of giving the money back to Dhanumati, the money was used to pay back the family members because Dhanumati "wanted to pay off Lisa's debts." Trial Tr. (Day 2 of 3) 11:22-13:15, Mar. 9, 2021, Doc. No. 126. Hank, who did the accounting for Raman and JaxFlorida, signed the checks. Trial Tr. (Day 2 of 3) 13:16-17, Mar. 9, 2021, Doc. No. 126; Pl.'s Ex. 60, Doc. No. 96-10. The Trustee tries to point to the fact that Dhanumati was not aware of the family funds as evidence that her testimony does not corroborate Hank's and Lisa's testimonies. Trustee's Proposed Findings of Fact and Conclusions of Law 16 n.54, Doc. No. 137. However, Dhanumati clearly remembered wanting to help Lisa with the purchase of the Hotel and remembered the amount was $350,000. Dhanumati Patel Dep. 15:15-16; 16:4-5, Doc. No. 102. So, whether she realized it was to repay other family members who had initially loaned the money is insignificant. There seems to be some confusion on Dhanumati's part of the timeline and who the money was being lent to; however, ultimately the amounts in play and stories align, and the Court finds the testimony of Hank, Nita, and Lisa credible.
[50] Joint Stipulation of Facts ⁋ 28, Doc. No. 107; Pl.'s Ex. 24, Doc. No. 93-4; Pl.'s Ex. 25, Doc. No. 93-5. FFH opened a bank account at Regions Bank, N.A. ("Regions") on April 10, 2014. Joint Stipulation of Facts ⁋ 27, Doc. No. 107; Pl.'s Ex. 23, Doc. No. 93-3. To help Lisa, who was working full-time and living in Tampa, Hank would deposit the checks into the FFH bank account at Regions. Trial Tr. (Day 3 of 3) 78:10-23, Mar. 10, 2021, Doc. No. 127.
[51] Joint Stipulation of Facts ⁋ 30, Doc. No. 107; Pl.'s Ex. 27, Doc. No. 95-2; Pl.'s Ex. 28, Doc. No. 95-3.

Hank handled most of the communications with the hospitality loan broker, Rick Patel, and NOA on the financing.[52] But Hank always kept Lisa informed; they spoke several times per week on the details of the loan and the purchase. Lisa provided all documents requested by NOA to her father. She signed all required documents, including her financial statement, the loan application, a borrower information form, and FFH's franchise application and agreement with Choice Hotels.[53] Hank did not complete these forms or include any of his personal financial information. I specifically find that Lisa was the principal behind this purchase; although her father helped her with the negotiations and the paperwork, it was Lisa, not her parents, who was the intended owner of the Hotel through FFH.

FFH received an SBA-backed loan[54] from NOA for $1,050,000, which supported a purchase price of $1,120,000.[55] Lisa signed a revised sales contract for FFH's acquisition of the Hotel at the new price and provided a further non-refundable deposit of $275,000.[56] NOA's credit memo stated that Lisa was the member and 100%

---

[52] Joint Stipulation of Facts ¶¶ 30, 31, Doc. No. 107; Pl.'s Ex. 27, Doc. No. 95-2; Pl.'s Ex. 30, Doc. No. 95-5; Pl.'s Ex. 31, Doc. No. 95-6.
[53] Trial Tr. (Day 3 of 3) 93:13-18, 111:1-14, Mar. 10, 2021, Doc. No. 127; Pl.'s Ex. 29, Doc. No. 95-4; Defs.' Ex. 1, Doc. No. 90-1; Defs.' Ex. 21, Doc. No. 90-21; Pl.'s Ex. 23, Doc. No. 90-23.
[54] Lisa executed a "Borrower's Certification" acknowledging receipt of the U.S. Small Business Administration Authorization ("SBA") (SBA 7(A) Guaranteed Loan). Defs.' Ex. 2, Doc. No. 90-2.
[55] Joint Stipulation of Facts ¶ 35, Doc. No. 107; Pl.'s Ex. 34, Doc. No. 95-9.
[56] Joint Stipulation of Facts ¶ 38, Doc. No. 107; Pl.'s Ex. 37, Doc. No. 95-12.

owner of FFH. Hank was designated as the "Key Manager."[57] The Debtors guaranteed the NOA loan and offered their home as collateral.[58]

FFH closed the purchase of the Hotel from JaxFlorida in December 2014.[59] The Hotel since has operated as an Econo Lodge.[60] Lisa makes all management decisions for the Hotel. And, as the owner of FFH, Lisa takes substantial financial distributions when the Hotel is doing well totaling about $300,000.[61]

The Trustee notes Lisa has paid for her parents, by adding them as authorized users on her personal credit card and by independently paying some of their expenses from 2017-2018 when their bank accounts were frozen due to litigation.[62] Lisa also paid for a family trip.[63] Lisa, using her personal credit card or her individual bank accounts, paid $22,924.03 in expenses for her parents from April 2017 through July 2019.[64]

---

[57] Pl.'s Ex. 98, Doc. No. 99-12. Hank had agreed to be the general manager for the Hotel, and in SBA lending, a "Key Manager" means someone critical to the operation of the business. Trial Tr. (Day 1 of 3) 133:13-137:1, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 3 of 3) 19:11-20:4, Mar. 10, 2021, Doc. No. 127.

[58] Pl.'s Ex. 52, Doc. No. 96-2; Trial Tr. (Day 1 of 3) 139:17-140:6, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 28:12-14, 41:9-11, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 118:22-119:5, Mar. 10, 2021, Doc. No. 127.

[59] Joint Stipulation of Facts ¶¶ 38, 43, Doc. No. 107; Pl.'s Ex. 37, Doc. No. 95-12; Pl.'s Ex. 42, Doc. No. 95-17; Pl.'s Ex. 43, Doc. No. 95-18; Pl.'s Ex. 44, Doc. No. 95-19; Pl.'s Ex. 45, Doc. No. 95-20; Pl.'s Ex. 46, Doc. No. 95-21; Pl.'s Ex. 47, Doc. No. 95-22; Pl.'s Ex. 48, Doc. No. 95-23; Pl.'s Ex. 49, Doc. No. 95-24; Pl.'s Ex. 50, Doc. No. 95-25; Pl.'s Ex. 51, Doc. No. 96-1; Pl.'s Ex. 52, Doc. No. 96-2; Pl.'s Ex. 53, Doc. No. 96-3; Pl.'s Ex. 54, Doc. No. 96-4; Pl.'s Ex. 55, Doc. No. 96-5; Pl.'s Ex. 56, Doc. No. 96-6.

[60] Pl.'s Ex. 35, Doc. No. 95-10; Pl.'s Ex. 36, Doc. No. 95-11; *see also* Joint Stipulation of Facts ¶¶ 36, 37, Doc. No. 107.

[61] Trial Tr. (Day 3 of 3) 101:10-14, Mar. 10, 2021, Doc. No. 127. To date, Lisa has drawn around $300,000 from FFH as owner distributions. Trial Tr. (Day 3 of 3) 101:15-17, Mar. 10, 2021, Doc. No. 127.

[62] Trial Tr. (Day 2 of 3) 165:25-166:10, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 115:3-116:01, Doc. No. 127.

[63] Trial Tr. (Day 2 of 3) 166:11-12, Mar. 9, 2021, Doc. No. 126; Trial Tr. (Day 3 of 3) 109:6-21, Mar. 10, 2021, Doc. No. 127.

[64] Trial Tr. (Day 3 of 3) 115:3-118:11, Mar. 10, 2021, Doc. No. 127; Defs.' Ex. 17, Doc. No. 90-17.

I specifically find Lisa made these relatively minimal gifts to her parents to help them during a difficult time and not as a ruse to hide their actual ownership interest in the Hotel. And, by comparing the relative amounts—Lisa paid herself $300,000; her parents received about $23,000—one easily concludes these payments were not because of any secret equity interest in the Hotel.

### **Hank Patel's Limited Role at the Hotel**

Hank earns a modest salary of $45,000 per year as the general manager of the Hotel.[65] He, his wife, and their youngest daughter continue to live at the Hotel.[66] Hank also receives a cell phone paid for by FFH.[67]

As the general manager, Hank is responsible for the day-to-day operations of the Hotel.[68] But all major decisions on large expenditures, such as renovations or furniture purchase, are made by Lisa.[69] Hank does pay for some business expenses for the Hotel using his personal credit card; however, he tracks expenses on a spreadsheet and any business expenses are paid from the FFH account.[70] Hank also has a Lowes credit card used for Hotel expenses.[71] Hank has never received even $1 in distributions from FFH.[72] And the Court finds Hank has no expectation of receiving any future distributions from FFH or any percentage of the ownership interest in FFH.

---

[65] Trial Tr. (Day 1 of 3) 67:10-13, 69:15-70:5, Mar. 8, 2021, Doc. No. 125.
[66] Trial Tr. (Day 1 of 3) 70:10-16, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 142:13-23, 143:19-144:5, Mar. 9, 2021, Doc. No. 126.
[67] Trial Tr. (Day 1 of 3) 70:6-9, Mar. 8, 2021, Doc. No. 125.
[68] Trial Tr. (Day 2 of 3) 20:11-16, Mar. 9, 2021, Doc. No. 126.
[69] Trial Tr. (Day 3 of 3) 98:23-99:3, Mar. 10, 2021, Doc. No. 127.
[70] Trial Tr. (Day 3 of 3) 43:16-44:9, Mar. 10, 2021, Doc. No. 127.
[71] Trial Tr. (Day 3 of 3) 43:10-15, Mar. 10, 2021, Doc. No. 127.
[72] Trial Tr. (Day 3 of 3) 119:23-25, Mar. 10, 2021, Doc. No. 127.

**The Trustee's Claims**

The Trustee filed his six-count complaint alleging FFH is secretly owned by Hank, not his daughter, Lisa. Every count is premised on the Trustee's argument that Hank is the true owner of FFH. In Count I, the Trustee seeks to establish that FFH is Hank's alter ego.[73] Count II seeks a declaratory judgment that Hank is the true nominee or equitable owner of FFH, which is administrable as property of the estate in this bankruptcy case.[74] In Count III, the Trustee seeks turnover of FFH's assets, money damages, and an accounting under § 542(a) of the Bankruptcy Code.[75] Counts IV and V are for fraudulent transfer under § 548(a)(1)(A) or (B) of the Bankruptcy Code asking Lisa to repay all distributions she received from FFH.[76] Count VI seeks to recover any monies Lisa received from FFH *after* this bankruptcy case was filed under § 549 of the Bankruptcy Code.[77] If the Court finds Hank is **NOT** the alter ego or equitable nominee owner of FFH, which I do, then all six of the Trustee's counts necessarily fail.

**Count I: Hank Patel is *Not* the Alter Ego of FFH**

The standard for piercing a corporate veil is determined by state law;[78] because FFH is a Florida limited liability corporation, Florida law applies. "Under Florida

---

[73] Compl. ¶¶ 65-69, Doc. No. 1.
[74] *Id.* ¶¶ 70-77.
[75] *Id.* ¶¶ 78-82.
[76] *Id.* ¶¶ 83-94.
[77] *Id.* ¶¶ 95-101.
[78] *See, e.g.*, *Energy Smart Inc. St. Petersburg v. Musselman (In re Energy Smart, Inc.)*, 381 B.R. 359, 379 (Bankr. M.D. Fla. 2007).

law, an alter ego claim is an action to impose liability on a corporation's principals or related entities where a corporation was 'organized or used to mislead creditors or to perpetrate a fraud upon them.'"[79] When appropriate, Florida courts will pierce the corporate veil upon finding by a preponderance of the evidence that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.[80]

"Florida law also recognizes 'reverse' veil piercing, by which, considering the same three factors, a corporate entity may be held liable for the debts of an individual debtor."[81]

Both parties spend time arguing whether Hank is a "shareholder" of FFH based on family ties and monetary contributions;[82] however, courts focus on *control*, not ownership in piercing a corporate veil.[83] And the question is not whether Hank worked

---

[79] *In re Xenerga, Inc.*, 449 B.R. 594, 598 (Bankr. M.D. Fla. 2011) (quoting *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998)); *accord Angueira v. Trujillo (In re Trujillo) (In re Trujillo II)*, 626 B.R. 59, 71 (Bankr. S.D. Fla. 2019) (quoting *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120, 1121 (Fla. 1984)) ("While 'the corporate veil may not be pierced absent a showing of improper conduct,' courts have found misconduct where 'the corporation was organized or employed to mislead creditors or to work a fraud upon them.'").

[80] *Seminole Boatyard*, 715 So. 2d at 990 (quoting *Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Holdings Corp.)*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)); *accord Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).

[81] *In re Trujillo II*, 626 B.R. at 71 (citing *Estudios, Proyectos e Inversiones de Centro America, S.A. (Epica) v. Swiss Bank Corp. (Overseas) S.A.*, 507 So. 2d 1119 (Fla. 3d DCA 1987)).

[82] *See* Defs.' Joint Post-Trial Closing Brief 17-19, Doc. No. 136; Trustee's Proposed Findings of Fact and Conclusions of Law 20-22, Doc. No. 137.

[83] *Netjets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, No. 3:10-CV-483-J-32MCR, 2011 WL 11560026, at *8 (M.D. Fla. June 13, 2011), *report and recommendation adopted in part*, No. 3:10-CV-483-J-32MCR, 2011 WL 11552881 (M.D. Fla. Sept. 27, 2011) (citing *Barineau v. Barineau*, 662 So. 2d 1008, 1009 (Fla. 1st DCA 1995)).

as a general manager, earning a modest salary, or that he and his wife lived at the Hotel; but rather whether he controlled or dominated FFH so much that FFH was virtually nonexistent.[84]

There is no question Hank helped Raman and Lisa, successively, buy the Hotel. He negotiated the purchase loans and continues to manage the Hotel. Hank helped Raman, just as he has in the past, largely because Raman was not a strong English speaker.[85] The testimony credibly demonstrated Hank and Raman communicated often about the purchase and Hank made the offer at Raman's direction.[86] The initial purchase of the Hotel was funded by a loan from Southern Hospitality and a smaller loan from Dhanumati.[87] No monies came from the Debtors. No credible evidence supports a conclusion that Hank controlled JaxFlorida or, by extension, the JaxPort Inn.[88]

When Raman wanted to sell the Hotel, Hank again helped his daughter buy it. Based on the cumulative evidence, I conclude that the extended Patel family frequently helps the younger generation get their start in business. The family helped Hank when he was Lisa's age, just as the fifteen Patel family members helped Lisa by contributing

---

[84] *See Rivera v. Larsen (In re Paul C. Larsen, P.A.)*, 610 B.R. 684, 688 (Bankr. M.D. Fla. 2019), *aff'd*, 826 B.R. 446 (M.D. Fla. 2021).
[85] Trial Tr. (Day 3 of 3) 32:16-21, Mar. 10, 2021, Doc. No. 127.
[86] Trial Tr. (Day 1 of 3) 78:1-13, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 3 of 3) 32:10-24, Mar. 10, 2021, Doc. No. 127.
[87] Trial Tr. (Day 2 of 3) 183:19-24, Mar. 9, 2021, Doc. No. 126.
[88] Hank credibly testified that he assisted Raman with his accounting and would assist his wife with managing the hotel. *See* Trial Tr. (Day 1 of 3) 71:3-72:20, Mar. 8, 2021, Doc. No. 125; Trial Tr. (Day 2 of 3) 13:16-17, Mar. 9, 2021, Doc. No. 126. Raman's testimony at trial and the other evidence presented by the Trustee did nothing to sway this Court to believe otherwise.

the money she needed to buy the Hotel. The Patels are a close-knit family who work together to help each other. And now Lisa is helping her parents by giving them minimal employment and assistance for her younger sister with special needs.

Hank undisputedly communicated directly with the hospitality loan broker on the financing;[89] however, as the broker testified, this is typical of transactions in the Indian community.[90] Hank, who has been in the hospitality industry for close to forty years,[91] was helping his daughter buy her first hotel. Hank provided no money to purchase the Hotel. He did not sell or transfer the Hotel or any of his assets to FFH or Lisa. There is nothing to show that Hank used FFH to "hide assets" to avoid his pre-existing liabilities.[92]

As evidence of misconduct, the Trustee points to an email where Hank told his two daughters he could not buy the Hotel and asked if they were interested in acquiring the property.[93] This alone does not show that FFH was "organized or used to mislead creditors or to perpetrate a fraud upon them."[94] The evidence showed the opposite—the Patel family collectively use their expertise in the hotel and hospitality industry to help one another, not to defraud their creditors.[95]

---

[89] Joint Stipulation of Facts ¶¶ 30, 31, Doc. No. 107; Pl.'s Ex. 27, Doc. No. 95-2; Pl.'s Ex. 30, Doc. No. 95-5; Pl.'s Ex. 31, Doc. No. 95-6.
[90] Trial Tr. (Day 2 of 3) 47:10-15, Mar. 9, 2021, Doc. No. 126.
[91] Trial Tr. (Day 1 of 3) 67:20-22, Mar. 8, 2021, Doc. No. 125.
[92] "It is particularly appropriate to apply the alter ego doctrine [to pierce the corporate veil] in 'reverse' when the controlling party uses the controlled entity to hide assets . . . to avoid the pre-existing liability of the controlling party." *Braswell v. Ryan Invests., Ltd.*, 989 So. 2d 38, 40 (Fla. 3d DCA 2008) (alterations in original) (quoting *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994)).
[93] Pl.'s Ex. 5, Doc. No. 92-5.
[94] *In re Xenerga, Inc.*, 449 B.R. at 598 (quoting *Seminole Boatyard*, 715 So. 2d at 990); *accord In re Trujillo II*, 626 B.R. at 71 (quoting *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1120, 1121).
[95] *See* Trial Tr. (Day 2 of 3) 145:4-9, Mar. 9, 2021, Doc. No. 126.

Lisa controls FFH. Lisa is in control of the Hotel. She uses the Hotel for her own benefit receiving $300,000 in distributions from FFH, and simultaneously giving her parents jobs with modest salaries, a place to live, and minimal gifts of around $23,000 over five years.

Lisa is the owner of the Hotel through FFH.[96] She paid for the Hotel with family contributions and the NOA loan.[97] The Debtors did not provide funds. Lisa decides on large expenditures including renovations completed to comply with the Econo Lodge franchise requirements.[98] As the general manager, Hank may run the Hotel day-to-day,[99] but he does not dominate or control FFH so much that FFH's existence is "nonexistent."[100]

No credible evidence supports the Trustee's argument that Hank created FFH "to mislead creditors or to work a fraud upon them."[101] The Trustee has failed to pierce FFH's corporate veil or show Hank has any ownership interest in FFH or the Hotel. A Final Judgment shall be entered for the Defendants and against the Trustee under Count I.

### Count II: Lisa Patel (not Hank Patel) is the Equitable Owner of FFH

---

[96] *See, e.g.*, Pl.'s Ex. 52, Doc. No. 96-2 (NOA Bank loan closing documents indicating Lisa is the owner of FFH and Hank is the "key manager"); Defs.' Ex. 1, Doc. No. 90-1 (franchise agreement with Choice Hotels executed by Lisa on behalf of FFH).
[97] Joint Stipulation of Facts ¶¶ 28, 35, Doc. No. 107; Pl.'s Ex. 24, Doc. No. 93-4; Pl.'s Ex. 25, Doc. No. 93-5; Pl.'s Ex. 34, Doc. No. 95-9.
[98] Trial Tr. (Day 3 of 3) 98:24-99:14, Mar. 10, 2021, Doc. No. 127.
[99] Trial Tr. (Day 2 of 3) 20:11-16, Mar. 9, 2021, Doc. No. 126.
[100] *See Seminole Boatyard*, 715 So. 2d at 990.
[101] *In re Trujillo II*, 626 B.R. at 71 (quoting *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1120).

Having found Hank is not the alter ego of the Hotel or in FFH, a summary analysis of Count II is merited. In Count II, the Trustee, citing 28 U.S.C. § 2201(a)[102] and 11 U.S.C. § 541,[103] requests a declaratory judgment that Hank is the true equitable owner of FFH and his equitable ownership interest in FFH is property of the bankruptcy estate.

Under 28 U.S.C. § 2201, "[b]ankruptcy courts commonly award declaratory judgments to bankruptcy trustees seeking to resolve disputed ownership interests and recover undisclosed assets for bankruptcy estates."[104] The Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[105] "The determination of what constitutes property of the estate is a question of federal law, even though the 'nature and existence of a debtor's right to property is determined by looking at state law.'"[106]

Property of the estate includes equitable or beneficial interests of a debtor held by a nominee.[107] "A nominee is one who holds bare legal title to property for the benefit

---

[102] "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

[103] "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

[104] *In re Trujillo II*, 626 B.R. at 73 (citing *Woodard v. Hammons (In re Chesley)*, 551 B.R. 663 (Bankr. M.D. Fla. 2016); *Genova v. ESM Realty Trust (In re Stoll)*, 330 B.R. 470 (Bankr. S.D.N.Y. 2005)).

[105] 11 U.S.C. § 541(a)(1).

[106] *In re Chesley*, 551 B.R. at 670 (quoting *Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350, 1353 (11th Cir. 2002)).

[107] *Daer Holdings, LLC v. Menchise (In re Steffen)*, No. 8:13-CV-1700-T-27, 2014 WL 11428827, at *4 (M.D. Fla. Mar. 13, 2014), *aff'd*, 611 F. App'x 677 (11th Cir. 2015).

of another."[108] Although Florida law does not have a clear standard to determine nominee ownership, Florida law does recognize that ownership interest may lie with a party that is not the legal titleholder.[109]

To determine whether a corporation is a taxpayer's nominee, the Eleventh Circuit in *Shades Ridge Holding Co. v. United States* identified three factors to be considered: (1) the control the taxpayer exercises over the nominee and its assets; (2) the use of corporate funds to pay the taxpayer's personal expenses; and (3) the family relationship between the taxpayer and the corporate officers.[110] Although the factors "should not be applied rigidly or mechanically" and "no one factor is determinative,"[111] control over the property is the most important factor.[112] These factors have been applied to claims other than those to establish taxpayer liability,[113] and this Court believes that the *Shades Ridge* test is appropriate here.

Based on the evidence, the Court finds FFH was not Hank's nominee. Hank is not and never was the equitable and beneficial owner of FFH. The Debtor has never exercised control over FFH or the Hotel.

---

[108] *May v. United States*, No. 07-10531, 2007 WL 3287513, *1 (11th Cir. Nov. 8, 2007) (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001)).
[109] *In re Steffen*, 2014 WL 11428827, at *4 (first citing *United States v. Dornbrock*, No. 06-61669-CIV, 2008 WL 769065, at *5 (S.D. Fla. Jan. 17, 2008), *aff'd*, 309 F. App'x 359 (11th Cir. 2009); then citing *Towerhouse Condo., Inc. v. Millman*, 475 So. 2d 674, 677 (Fla. 1985)).
[110] *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 729 (11th Cir. 1989).
[111] *In re Steffen*, 2014 WL 11428827, at *5 (quoting *United States v. Todd*, No. 5:05-CV-343-OC-10GRJ, 2008 WL 2199873, *3 (M.D. Fla. Mar. 19, 2008)).
[112] *Id.* (citing *May v. A Parcel of Land*, 458 F. Supp. 2d 1324, 1338 (S.D. Ala. 2006)); *see also Shades Ridge*, 888 F.2d at 729 ("The issue . . . depends on who has 'active' or 'substantial' control."); *In re Trujillo II*, 626 B.R. at 73 ("The most critical factor usually is control.").
[113] *Angueira v. Trujillo (In re Trujillo) (In re Trujillo I)*, 607 B.R. 734, 737-38 (Bankr. S.D. Fla. 2019).

And Hank has not used corporate funds to pay for personal expenses. Other than his salary, cell phone, and reimbursement of business expenses, Hank has received no distributions from FFH.[114] And, for the business reimbursements, he keeps track of all charges to insure FFH only pays for charges made for business.[115]

All FFH distributions of approximately $300,000 were paid to Lisa, every dime.[116] Lisa, not Hank, is responsible for all federal income taxes incurred because of FFH's pass-through income.[117] And, although Lisa gifted her parents around $23,000 for their bills and expense,[118] she did this from her personal funds, not from a FFH account.[119] She is a loving daughter helping her parents.[120]

While there is a loving family relationship between Hank and Lisa, the owner of FFH, that alone is not dispositive. The critical issue is substantial control,[121] which the Trustee has not been demonstrated.

As the Trustee has failed to prove the factors required to demonstrate that FFH is Hank's nominee, judgment shall be entered for Defendants and against the Trustee on Count II.

### **Counts III-VI Fail as a Matter of Law**

---

[114] Trial Tr. (Day 1 of 3) 69:20-70:1, Mar. 8, 2021, Doc. No. 125; Defs.' Ex. 42, Doc. No. 90-42; Trial Tr. (Day 3 of 3) 119:23-25, Mar. 10, 2021, Doc. No. 127.
[115] Trial Tr. (Day 3 of 3) 43:16-44:9, Mar. 10, 2021, Doc. No. 127.
[116] Trial Tr. (Day 3 of 3) 101:10-17, 119:23-25, Mar. 10, 2021, Doc. No. 127.
[117] Defs.' Ex. 14, Doc. No. 90-14.
[118] Trial Tr. (Day 3 of 3) 115:3-116:1, Mar. 10, 2021, Doc. No. 127; Defs.' Ex. 17, Doc. No. 90-17.
[119] Trial Tr. (Day 3 of 3) 116 :13-16, Mar. 10, 2021, Doc. No. 127.
[120] Trial Tr. (Day 3 of 3) 101:15-17, Mar. 10, 2021, Doc. No. 127. *Cf. In re Trujillo I*, 607 B.R. at 741 (concluding that the plaintiffs created a sufficient factual record for the court to find cause to look beyond the corporate form because the debtor and his wife were the only persons who have ever received any distributions).
[121] *Menchise v. Steffen (In re Steffen)*, 464 B.R. 450, 462 (Bankr. M.D. Fla. 2012), *aff'd sub nom. Daer Holdings, LLC v. Menchise (In re Steffen)*, 2014 WL 11428827, *aff'd*, 611 F. App'x 677.

The Trustee's remaining counts for turnover, fraudulent transfer, and avoidance rely on a finding that FFH is the alter ego or nominee of Hank. Because the Court has concluded that the Trustee failed to demonstrate that FFH is Hank's alter ego or nominee, the remaining counts fail as a matter of law. Final judgment for the Defendants and against the Trustee shall contemporaneously enter as to all counts.

### 

The Clerk will serve a copy of this order on all interested parties.